All rise. The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Good morning. Please be seated. We are very happy to be here today in the Northern District of Georgia in this beautiful courtroom. And we have today four cases on the schedule. Our first case is AU Technologies v. HHS. Mr. Bargava, did I say your name correctly? Yes, thank you. Okay. Please, whenever you're ready. May it please the court, my name is Michael Bargava and I represent the AU Technologies Corporation. In the briefing for this case, it became clear that the parties agreed on two key points which should significantly narrow the issues here. First, the parties agreed the task order issued by the FDA is a procurement contract. Over which the Civilian Board of Contract Appeals would have jurisdiction under the Contract Disputes Act. And second, the parties agreed that AVU's End User License Agreement, or EULA, was incorporated into that task order. Under basic contract principles, the only logical conclusion to that is that the terms of the EULA became an enforceable part of a procurement contract. This court reiterated that basic concept just last year in CSI Aviation v. DHS. But EULA, is that interchangeable with MSA in the briefing? Yes, correct. It's known as either the Master Subscription Agreement, which is AVU's particular term for it, but EULA is the more common term. Didn't you argue to the board that the MSA or EULA was a standalone contract enforceable on its own? That's correct. It is both. It is a standalone contract that was incorporated into the task order. Do you have alternative arguments? Are you arguing, first of all, it's a standalone contract, but also, alternatively, it should be incorporated into the schedule contract? Or do you have alternatives, or are you just arguing that it's standalone? It is incorporated. There's no dispute among the parties. It is incorporated into the task order and into that procurement contract. The government doesn't disagree with that. That's an established fact. But you did separately argue, at least to the board. I'm not sure what you're arguing to us. But at least to the board, you told them, I thought the MSA is a standalone contract. And so, board, what you need to analyze is whether the MSA standing alone is a procurement contract. Wasn't that part of what you argued? Well, partly, Your Honor. We argued, yes, that it is a standalone contract. We did not argue that the board had to look at it in isolation. That was not our argument. That was the government's argument in reply brief to their summary judgment motion. And then the board asked for a briefing on that. But it was our argument throughout that this was a standalone contract that was incorporated into the task order. I'm having a little bit of a hard time following it, and let me tell you why. One thing that the board did is it looked at it as, I'll say, a standalone contract and analyzed it in isolation. On appeal, you're arguing that I think that they erred by doing that and that they should have considered it as part of the full contract. And that's what I'm, when you say standalone, you're throwing me off because standalone feels like isolation. Isolated contract, standalone contract, could you be a little bit more clear about what you're arguing now and what you argued below? Yes, Your Honor. So it can be a standalone contract. And this is the standard EULA that AVU uses with all customers, not just the government. And it was incorporated into the contract. We do argue, both below and here, that the board erred in analyzing it separately because it is clearly part of a procurement contract, just as in the Rocky Express case. My concern is if you told the board it's a standalone contract, analyze it separately, and then the board analyzed it separately at your invitation, what's wrong with what the board did? Well, Your Honor, we didn't ask the board to analyze it separately. We asked the board to analyze it as part of a procurement contract. Maybe one thing that would be helpful, for at least me, would be for you to tell us exactly what issues you believe we should be deciding here. And I think that would interplay with some of the questions that my colleagues asked. Well, Your Honor, thank you for that. The, another way to think about this is that if Carisoft had brought this claim, it's the reseller, the original prime contractor. If Carisoft had brought this claim, there would be no dispute here over whether this was a procurement contract over which the board had jurisdiction under the Contract Disputes Act. Nobody would be arguing. I don't think you answered my question. I mean, maybe my question was unclear, but I was wondering if you could just, and you can, like, tell me there are two that you think we should decide, and you can just say this and that. Just, I just want to make sure I level set to make sure we're all on the same page. Yes, Your Honor, and that was my next sentence. Oh, okay. I didn't realize we were doing that. Proceed ahead. So the issue, now that that's established, that Carisoft could have, could bring this claim as a procurement contract, then the real issue is whether AVU can bring this claim. And so the issue there is whether AVU has privity with the government here through the U of M. And that's the question that both we and the government are asking this court to resolve. Right, but that's also a question that wasn't resolved below. Does it make sense for us to resolve it without a decision from the board below? We do think it makes sense, Your Honor. I mean, first of all, it's a purely legal question as to whether there is privity here. The facts that the board found were undisputed facts in its opinion. So there's no dispute of facts here if the issue has been fully briefed both by AVU and the government. And it doesn't make sense in our opinion to remand this for a determination of privity issue because it almost inevitably is going to end up back in this court after that. And so for judicial common reasons, it makes sense for you— But if it has an appellate court, it generally is preferable to have a decision to review. We don't usually make decisions in the first instance without a reviewing court and without the trial court having made the determination of the board in this circumstance. Can I go back to a question that Judge Stark asked? Do you have somewhere in the record that you could cite to in the appendix to support that you argued the MSA—requested that the board look at the MSA as incorporated into the schedule contract and argued that together as opposed to looking at the MSA alone? I can't get you the site, Your Honor. It's in the—again, the board asked for supplemental briefings specifically on this. I just want to make sure that you've argued it. And so if you can just get us a site to the appendix so that we can see where it was argued below. Because, you know, if the board was told to analyze it on its own or standalone, then it would be hard for us to say there's error. Yes, and Your Honor, the government does say in its brief that ABU was pushing the argument that this was a standalone case. That's not correct. This was an issue that the government brought up in its reply brief, and then the board asked for supplemental briefing. But in that supplemental briefing, we specifically did say this is part of a larger procurement agreement that you have to look at it. If you have the site, that would be helpful for us. I have an appendix question for you as well. Do you have it there? I do have the appendix. I'll wait if you want to get to it. It's time to judge Dole. I will have to look through it. I'll give it to you. All right. Do you have AB 170 to 171? The government cites that as saying, at least at the motion to dismiss stage, that's you arguing that the MSA is a standalone contract, and that that's how you prevailed at the motion to dismiss stage. True or not true? Again, Your Honor, it is the standalone contract. It is. So the answer is yes, that was your argument, at least part of your argument to the board. That it is a standalone contract. Yes. We have never wavered on it. It is a standalone contract. Again, this is the way. So was it two alternative arguments you made to the board? It's a standalone contract, but it also is incorporated into a larger procurement contract? No, Your Honor. So we are saying that this is a standalone contract, but we never asked the board to analyze it separately from the procurement contract in which it's incorporated. So are you seeing some distinction between arguing to the board it's standalone and whether they need to analyze it separately? I don't understand that distinction. I mean, this happens in other contracts as well. Again, back to Rocky's Express. There was a precedent agreement that was an agreement to agree on other agreements, essentially. And all of these were incorporated into what this court said was a procurement contract. And all of those individual contracts, all the service agreements and such in Rocky's Express were standalone agreements. But they were incorporated into other agreements. And all of them, this court said, you have to look at them holistically to determine whether it's a procurement contract for jurisdictional purposes. I understand that. I just want to make sure that that's how you argued it below. Because, of course, if you argued it differently below, as this sounds, in talking about a freestanding contract, then we want to make sure that the board was told to analyze it that way. And now we're arguing error on appeal. That's not going to work. Right? No, Your Honor. We did not ask the board to analyze it separately. They asked for supplemental briefings specifically on that question as to whether it did in isolation. Give us the statement. Yes, Your Honor. Can I go back to what you said about there's no dispute. Karasoff could have brought this claim. And I think that might be right. But then I don't understand. In the reply brief to us at page 10, you seem to go out of your way to say that Karasoff is not a party to the MSA, not a party to the EULA. If they're not a party to that, then how could they bring the claim? Because it was incorporated into their larger agreement. Exactly. So then what is the point of continuing to emphasize that it's a stand-alone? Are you saying that the EULA is a stand-alone agreement and it's just not enforceable? Because, I mean, it can't be enforceable by Karasoff. You just told us that they're not a party to it. We do think it's enforceable, Your Honor. Is the MSA enforceable by Karasoff? We think, again, basic contract principles, that if language is incorporated into a broader agreement and that language is violated, the parties in privity of the broader agreement can sue for violation of any of the language in that. So we do believe that Karasoff could sue under this. But we also agree, we also think that AB can sue. And I'll reserve the rest of my time to the others. Okay. Thank you, Mr. Berger. Now let's hear from the government. Mr. Volk, whenever you're ready. May it please the Court. The government did not contract with AB. It contracted with Karasoff. Only Karasoff can sue the government under Karasoff's contracts, and it does not. The question before the Court is whether AB is a contractor for purposes of the Contract Disputes Act. Even under the resolution, the manner in which the Board resolved it, where it said, even if this is some sort of contract, it's not a procurement contract for purposes of the CDA, that's still answering the question, is AB a contractor for purposes of the CDA? Can you address this question that my colleagues have been asking about the freestanding contract issue versus the incorporation? What was argued below? I can't put my finger on a citation, as the Court asked, whether AB specifically argued below that it has privity through incorporation. My general recollection is that it has argued both of these things at all places, that it has argued that as part of its arguments, I believe, it has said it's incorporated into the Karasoff schedule contract, which we agree, and even separately, it's a separate contract. The argument that it's— So you think that they have argued both, and they argued kind of alternatively or not? That's my general recollection. I don't know for sure that it was— When you say that's my general recollection, I had an or question. So what is your general recollection, that they argued both theories? That they've made both arguments, yes. That they've put both theories into their briefs and that they've been in— that if they looked, that they could find an argument where it leads exactly and how it gets into the argument may be changed over time. But my general recollection is that, yes, both arguments would probably show up in the briefs included from below. Let me just press you a little bit on that, because I understood your briefing to us to argue that they survived the motion to dismiss only by arguing that the MSA is a standalone agreement, at least implying to the Board, don't worry about whether it's incorporated or not. And then I think one reading of what the Board did in the end was say, we're only asked in this case to decide if the MSA is a standalone procurement contract. It isn't. Therefore, the government wins. Is that what happened below? Because if it did, then I'm not sure how that squares with the fact that you're conceding they made this alternative argument that they emphasized to us. The way they survived the motion to dismiss, to start with the first part, is that they convinced the Board that they had made adequate allegations, not frivolous allegations, that they had a contract with the government. And I do think that that's right, that they convinced the Board by saying, we have this separate document. Put aside the Karasoff contracts. That was the main part of their arguments below and even now. I think if the question is, yes, we have a contract, but is it a contract with Karasoff or is it a contract with ABU, it's clearly a contract with Karasoff. So ABU is trying to get around that by saying, we have a separate contract. We have our own contract. And either it's part of Karasoff's contract. It doesn't make sense. The terms are part of Karasoff's contract, but Karasoff is still the only contract we have. Or this document is our own contract. But neither of these arguments works. Isn't it true, though, that the Board only addressed one of those theories, which is that the separate contract theory and then said that one wasn't a pyramid contract, right? I don't see how we can address the alternative theory when the Board didn't do so in the first instance. What do you think? Well, certainly the government argued throughout the Board case that this should be dismissed. Again, this should be dismissed in the summary judgment motion. Again, if ABU is not a contractor, I think the Court would be able to say, the Board should have just said there is no contract at all between ABU and the government. It doesn't have to go into this analysis of, well, if there is a contract, is it a procurement contract under the CDA? So I think that question is properly before the Court, based on all the arguments the government made below, that this should have been dismissed from the beginning when ABU was never able to show the Board, here's a contract between me and the government. It was always, here's a penicillin contract. Is it your position, though, that we should not address the privity argument that your opposite counsel raised? We think that the Court should. We start by saying there was no contract at all. That's the argument, the privity argument, is that there's no contract at all here, and whereas the Board said, well, even if there is a contract, it's not a procurement contract within our CDA jurisdiction. We say the Court should just say, instead of that, what we think is a little bit of a strained analysis to say, well, if there were a contract, it's not a procurement contract. We think the Court should say there is no contract at all here. And so in that sense, yes, we do think the Court should resolve the privity argument because there was none. What about engaged learning? I mean, the Board resolved this as a jurisdictional issue. Is it really more of a merits issue under engaged learning? It's both. In this case, the procedural stage is important. The Board issued its order after summary judgment briefing, after discovery was closed. Both sides are agreeing that the facts are definite at this point. So what we understand engaged learning to be saying is that at an early stage of the case, the Court or Board may not be appropriate to require the other side to have their proof of their jurisdictional facts. But, of course, there were motions to dismiss here, and the Board said, well, the allegations are good enough under engaged learning. The point at which this got dismissed, the procedural stage of the case, is either there's going to be a trial or, in this case, the government got the judgment. So there has to be some reason to have a trial. A jurisdictional issue can be a merits issue too, as I think is reflected by the Supreme Court's cases, which we cited of Brownback and Venezuela. So just because it's a merits issue doesn't mean that it also has a jurisdictional consequence, which is what happened here. If there's no contract between the government and the contractor, whenever that's decided, even if it's post-trial. It could be that it's not jurisdictional. It's just that they don't have a contract, and therefore they're not successful. Right. It is a merits, but it doesn't mean it's not a jurisdictional issue too, because you have to have a contract to be a contractor, which is a jurisdictional issue. Well, how do you drive yourself hard, though, for it having to be a jurisdictional issue? I mean, at least my take on engaged learning seemed to set a fairly low bar in order to show jurisdiction. Like, what's wrong with it just being a merits issue? I don't think that's a bad thing for your case. It's just that you have to have a plausible allegation. There's nothing wrong with it being a merits issue. It is a merits issue, and I'm just making the point that I don't think the board did anything wrong by describing it as a jurisdictional issue because it's both. What do you see in engaged learning that would limit it to just the initial part of the case before there's discovery? Like, why shouldn't we understand engaged learning as already deciding that a non-frivolous allegation is sufficient even after discovery to establish jurisdiction, not the merits? Well, I mean, I don't think engaged learning changed a number of precedents from this court down to the Supreme Court, like Cedars-Sinai, that made clear that jurisdictional challenges can come in two forms. And so they can be a facial attack on whether the allegations are adequate, where they can say the fact you're alleging is not true. And so my understanding of engaged learning is that the court in that case said, regardless, you can't necessarily require a claimant to prove its allegations at an early stage of the case. If they have a non-frivolous allegation of jurisdiction, that's good enough for now. But at an appropriate point in the case, at some point, the facts have to be proven. And if they're not, sure, it goes to the merits. It decides the merits. If you don't have a contract, then you don't have a meritorious contract. But also, at the same time, the board's jurisdiction is limited to cases where you have a contract. If you don't have a contract, it also means the board didn't have jurisdiction. Whatever that may be decided, the fact that it's a merits, they're not mutually exclusive, is my understanding, under the Supreme Court's rulings. The fact that it decides the merits doesn't mean it doesn't also decide the merits. This is maybe jurisdictional and merits. What's your best argument that the MSA, as incorporated into the larger scheduling contract, is not a procurement contract enforceable by a view? It's that it's a contract with Carousel. It is a procurement contract between the government and Carousel. It's terms. That MSA is terms that got put into a Carousel contract, a scheduled contract, and then another, by fact, a task order issued by the FDA under that scheduled contract. Doesn't the EULA or MSA itself say that it's an agreement between a view and the end user, which here is the FDA? It doesn't actually say that because the version that's in the contract, the blank version, doesn't actually say any agency. It has a blank template. Why isn't there a genuine dispute of material fact over which version is the one that the government agreed to? Well, on the specific granular facts, I don't think there actually even is a dispute that the one at 2991, appendix 2991, is the one that was put into the GSA contract with Carousel. And I certainly don't think there's a dispute at all. It's not a genuine one that this later version that was proposed was ever agreed to by the government. There's no indication of that. And it's clear that the government didn't enter into or modify that task order contract to add any other version of this MSA. So I think it's pretty clear, if it's even disputed at all, that the version of 2991, the blank template, is the only one that was ever agreed to. If we were to analyze the MSAs incorporated into Carousel's GSA scheduled contract in that fashion, we would have to resolve the privilege issue, wouldn't we, in order to resolve whether, in fact, who the contractor was? Yes, to decide who the contractor is, you'd have to address privity. I think that's right. That would be the question. But the case as we see it is not a question of whether there is or isn't a procurement contract. There is. It's with Carousel. And that's the point. There's no contract with ADO. So if Carousel wants to sue the government, it can do that as a contractor. But A, you can't under Carousel's contracts. So for these reasons and those in our brief and the Board's opinion, we respectfully request that the Court affirm the Board's decision. Thank you, Mr. Paul. Mr. Barkoffa? You have three minutes, a little over three minutes. Thank you, Your Honors. First of all, the citation you are looking for is in the appendix 731 is where the briefing starts. And we do specifically make the argument here that, again, as the Board asked, you can, if you analyze it as a scandal. I see the briefing starts at 731. Can you point us to the specific language that you're relying on in the document? That will be more helpful for us as opposed to the entire document. Yes, Your Honor. On page 736, we argue that the Board should analyze it as incorporated into the larger review. So, Your Honors, the government here has conceded that Carousel could bring the claim if it brought the claim. And that there would not be a jurisdictional issue here. So, again, it really does come down to privity, as I was saying to you, Your Honor. So we believe that the Court needs to determine the privity issue. The facts are all established. The contract specifically says that there's a provision in there saying that if it's incorporated into a broader government contract, it does not need signatures. The government has conceded that it agreed to all of the terms in that EULA, including that specific provision that said it didn't need signatures. So it did establish a contract directly with AVU when it signed the task order. It established a contract with Carousel, and it established a contract with AVU. Again, the government hammers on the point that in the ordinary procurement, there is only one prime contractor. This is not the ordinary procurement. There is, again, a separate contract that is very clearly established as part of the task order, and the government agreed to it, and knowingly agreed to it. Its only mistake was a legal mistake in thinking that it didn't agree to it with AVU, but it clearly did, according to the undisputed evidence. Do you agree that it's the version at A2991 that is the operative agreement that you believe you have with the government? Correct, Your Honor. That's the only one that was agreed to by the parties. There was a discussion later on after the task order was issued as to whether there would be a different version of the AVU, but that was done because the government specifically wanted additional terms. There were some price discounts and some additional optionality that the government had asked for, and AVU was providing for the government. The government at that point said, no, we don't want to sign it, and AVU said, fine, that's fine with us. We already have these, and both sides agreed that the version that you cited was the operative version. Thank you, Your Honor. Thank you. We thank both counsel, and we're going to take the case under submission.